## MATTHEW HUNT *versus* BENJAMIN CARD

**The** *St.* 1829, *c.* 2, subjects to the penalty of fifty dollars a person who, not having first obtained a commission or branch, shall undertake to pilot *any* vessel (other than those which are particularly excepted) into or out of the harbor of Boston, without regard to her draft of water.

**As** by the above-cited statute, American vessels engaged in the plaster trade between Boston and the province of Nova Scotia are not required to take a pilot, and as by the commercial arrangements between Great Britain and the United States, British vessels coming from the British colonies are admitted into our ports subject to no other duty of tonnage or impost or charge of any description whatever, than would be levied on vessels of the United States coming from such colonies, British vessels engaged in the plaster trade between Boston and Nova Scotia may lawfully refuse to take a pilot into or out of the harbour of Boston.

THIS was a *qui tam* action, founded on *St.* 1829, *c.* 2, § 1, which provides, that no person shall undertake to pilot any vessels, (fishing vessels, vessels bound to or coming from any port within the commonwealth, all vessels sailing under a coasting license, under two hundred tons burden, and all American vessels engaged in the plaster trade bound from any port within the province of New Brunswick, or Nova Scotia, excepted) into or out of the harbor of Boston, without first having obtained a commission, or branch, &c., under the penalty of fifty dollars for each offence. The declaration alleges, that the plaintiff was a branch pilot for the harbor of Boston, and that on October 23, 1831, he offered himself to the defendant, who was master of and on board of the schooner called the Traveller, of Halifax, she being required by law to take a pilot, to pilot her out of the harbor of Boston, but that the defendant refused to suffer the plaintiff to pilot her out, and proceeded to sea without the plaintiff.

The parties agreed that judgment should be rendered against the defendant, unless the Court should otherwise adjudge upon the following admitted facts ;—1. That the Traveller was on the day of the refusal complained of, a British vessel belonging to the province of Nova Scotia, and actually engaged in the plaster trade from that province to Boston :—2. That the Traveller drew less than nine feet of water.

. If on these facts the Court should adjudge that the defendant was not liable to the penalty of fifty dollars, a nonsuit was to be entered.

The cause was argued in writing.

*Blair* for the defendant. As the schooner Traveller drew less than nine feet of water, she was not bound to take a pilot. *St.* 1783, *c.* 13, § 2, 10 ; *St.* 1796, *c.* 85, § 2, 3, 5 ; *St.* 1819, *c.* 45, § 1 ; *St.* 1829, *c.* 2, § 1. The provisions in the previous statutes in regard to vessels drawing less than nine feet of water, are not expressly repealed by the last section of the statute of 1829, because this statute only provides that from and after July 1, 1829, no person shall undertake to pilot any vessel, except &c., and the repealing clause is not to take effect till the rules &c. are approved, &c. ; which was done on February 12, 1830. The repeal, if any, is by im‑ plication ; which is not allowed unless the repugnancy is plain. *Procter* v. *Newhall*, 17 Mass. R. 81 ; 6 Bac. Abr. 373, *Statute, D ; Thornby* v. *Fleetwood*, 1 Com. Rep. 207 ; *S. C.* 10 Mod. 123. The statute of 1829 and the previous ones are to be construed together, and in such manner as may give effect to each. Now if the provision, that from and after July 1, 1829, no person &c. shall undertake to pilot *any vessels*, under a penalty of fifty dollars, should be construed to mean *any such vessels* as were by the previous acts bound to take a pilot, then this penalty might be enforced when the act went into operation, on July 1, 1829. But if it is construed to mean all vessels except those expressly exempted in the statute of 1829, then 1. this penalty cannot be enforced against ves‑ sels drawing less than nine feet, because by the provisions of the previous acts they were not bound to take a pilot, and these provisions were not repealed by the last section of the act of 1829, when it went into operation, on July 1, 1829 ;– 2. The previous acts authorized the fees of pilotage to be fix only for vessels drawing nine feet or more, and therefore th‑ penalty would be imposed when no pilot was authorized to tak charge of the vessel or demand fees ;—and 3. It would l imposed on vessels which are not bound by any statute to tak a pilot, such as ships of war, half deck vessels of five tons ana under, &c. *United States* v. *An Open Boat &c.*, 5 Mason 120. If this penalty could not be enforced when the act o. 1829 by its express terms went into operation, it could not be afterwards. *Boat Eliza &c.*, 2 Gallis. 4.

2. All *American* vessels engaged in the plaster trade from any port within the province of New Brunswick or Nova Scotia, are, by the statute of 1829, exempted from the charge of pilotage ; and by the commercial arrangements made between Great Britain and the United States, British vessels are subject to no higher or other duties or charges in any of the ports of the United States, than those payable in the same ports by vessels of the United States. See the convention to regulate commerce between the territories of the United States and Great Britain, of July 3, 1815, in Laws of U. S. *Vol.* 6, *p.* 603, and Gordon's Dig. 183 ; Act of Congress of May 29, 1830, (c. 208, § 1) ; the arrangement between the United States and Great Britain, made by Mr. M'Lane and Lord Aberdeen, the president's message, of January 4, 1831, the president's proclamation, of October 5, 1830, and the circular letter of the secretary of the treasury to collectors of the customs, of October 6, 1830, in Senate Documents, of 21st Congress, 2d Session, *No.* 20 ; Constitution of U. S. *art.* 6. Pilotage is a *charge* on the vessel. *St.* 1796, *c.* 85, § 12 ; *The Anne*, 1 Mason, 508.

*D. A. Simmons* and *Gay contrà.* Before the *St.* 1829, *c.* 2, vessels drawing less than nine feet were not obliged to take a pilot ; but this statute was intended to establish a new system ; and all the provisions of former statutes inconsistent with this statute are repealed, from and after the approval by the governor and council, of certain rules for the regulation of pilots. Such approval took place in February, 1830, long before the defendant's refusal to take a pilot, as alleged in the declaration, and whether a period existed in which the old system was not in full force nor the new one perfected, is therefore immaterial. *Goodenow* v. *Buttrick*, 7 Mass. R. 140 ; *Bartlett* v. *King*, 12 Mass. R. 545 ; *Nichols* v. *Squire*, 5 Pick. 168 ; *Ellis* v. *Paige*, 1 Pick. 45.

The *St.* 1829, *c.* 2, and the rules &c. made in pursuance of it, in no degree conflict with the intent of the convention of 1815, the act of congress of May 29, 1830, or the arrangement made by Mr. M'Lane and Lord Aberdeen. Neither congress, nor the parties to the convention and arrangement, had any reference to the matter of pilotage. By the act of con-

12 *

Hunt
*v.*
Card.

gress of August 7, 1789, (*c.* 9, § 4,) it was provided in express terms, that this subject should be regulated by the several States, and this was well known to both of the contracting parties. By the *duties* and *charges* mentioned in the act of congress of 1830, and in the convention and arrangement, must have been intended the duties and charges imposed by the government of the United States, and nothing more.

*June 27th.*     PUTNAM J. delivered the opinion of the Court. By the *St.* 1783, *c.* 13, § 2, every branch pilot, being commissioned &c., is empowered and directed to take charge of any vessel or vessels drawing nine feet of water and upwards, bound into the port of Boston. By § 10, outward bound vessels drawing nine feet of water and upwards, are under the same regulations. But coasting and fishing vessels are excepted from the operation of the statute. The governor and council were authorized, by § 5, to fix the fees of pilotage.

The *St.* 1796, *c.* 85, § 2, provides that no person shall undertake to pilot any vessel drawing *nine feet of water or more*, into or out of the harbor of Boston, without having obtained a commission or branch, &c. under penalty of fifty dollars. But there is a provision in § 8, that any master of a vessel from a foreign port who may choose to hazard the pilotage of his vessel into the harbor, may do so, paying half fees to the pilot who shall first offer his services.

By *St.* 1819, *c.* 45, § 1, any master of a vessel drawing nine feet of water and upwards, may pilot his own vessel, under certain provisions ; but coasters and vessels without registers, and all American vessels engaged in the plaster trade, bound from any port within the province of New Brunswick or Nova Scotia, are excepted from those provisions.

By the acts cited, vessels drawing *less than nine* feet of water are not obliged to take a pilot. The obligation is upon those which draw nine feet or more ; excepting coasters, and vessels without registers, and all American vessels engaged in the plaster trade. These regulations continued ten years ; when the *St.* 1829, *c.* 2, § 1, enacted, that no person or persons should undertake to pilot *any vessel* (fishing vessels, vessels bound to or coming from any port within the commonwealth, all vessels sailing under a coasting license, under two

hundred tons burden, and all American vessels engaged in the plaster trade bound from any port within the province of New Brunswick or Nova Scotia, excepted) into or out of the harbor of Boston, without having obtained a commission or branch, &c., under the penalty of fifty dollars, to be recovered, &c.    The 3d section authorizes the governor, with the advice of the council, to commission branch pilots, on the recommendation of the trustees of the Boston Marine Society ; and the trustees are authorized to establish rules for fixing the duties of the pilots, and the fees for their services.    And the 5th section repeals all acts and parts of acts inconsistent with that which was then passed.

This action is brought to recover the penalty of fifty dollars, against the defendant, the master of the schooner Traveller, for refusing to take a pilot according to the first section of the act of 1829, before cited.

The Traveller, on the 23d of October, 1831, the time of the refusal complained of, was a *British* vessel, belonging to the province of Nova Scotia, engaged in the plaster trade from that province to Boston.   She is not within the exception of the statute of 1829, for by that act, *American* vessels only, engaged in that trade, are exempted.

But the Traveller drew less than nine feet of water ; and it is contended for the defendant, that such vessels (not being obliged to take pilots in virtue of the acts relating to pilotage before 1829) were not intended to be included in the latter act ; that according to the true construction of the act of 1829, by the words *any vessel*, should be intended, any vessel which by the provisions of the prior acts was required to take a pilot, and as any vessel which drew less than nine feet of water, was not bound by the prior acts to take a pilot, such vessels are not by the last act obliged to do so.   But we cannot yield to this construction.   The provisions of the acts before 1829 were applicable only to vessels which drew more than nine feet.   The act of 1829 extends to any vessel (ex cepting such as are particularly excepted) without any regard to or notice of their draft of water.   They are inconsistent, and the latter statute is to prevail.

It is argued, that if the act of 1829 be construed to extend,

without limitation, to any and all vessels, it would embrace ves-sels not bound to take a register, &c. It may be that some inconvenience may happen from the supposed unintentional omission of the exemption contained in the former acts, of ves-sels drawing less than nine feet. It is for the legislature, and not for us, to apply the remedy, if any alteration is necessary.

But we are all satisfied, upon another ground, that the Traveller, being a British vessel in the *plaster trade between the province of Nova Scotia and Boston*, was not obliged to take a pilot, at the time when the defendant refused to do so, because British and American vessels were then by treaty and commercial arrangements between Great Britain and the United States, placed upon the same footing with each other, in relation to this matter.

We have seen that by the statutes of Massachusetts all *American* vessels engaged in the plaster trade aforesaid, are exempted from the charge of pilotage.

On October 5, 1830, our ports were opened to *British* vessels *coming from British colonial possessions, and their cargoes*, subject to no other duty of tonnage or impost, *or charge of any description whatever*, than would be levied on vessels of the United States arriving from the British pos sessions. This national arrangement was announced in the proclamation of the president of the United States, on Octo-ber 5, 1830.

But it is contended by the plaintiff, that the subject of pilot-age was not embraced in the commercial arrangements between Great Britain and the United States, but, that by the laws of the United States, this matter of pilotage is left to the regu-lation of the several States. If this be so, the conclusion would not follow ; for treaties are paramount to the laws of the States ; Const. U. S. *art*. 6 ; and we think that pilotage is to be considered as a charge upon the vessel. *The Anne*, 1 Mason, 508. The laws of the States must be considered and taken to be controlled by and subject to treaties, and the laws of the United States made conformably thereto.

The arrangement between the two countries before referred to, became the supreme law of the land, of which all Judges of the United States, and of the several States, were to take

notice. After it was promulgated, it was not for the State of Massachusetts to counteract its provisions, and continue to say that British vessels in the plaster trade between Nova Scotia and Boston should be subjected to the charge of pilotage, but that American vessels in the same trade should be exempted therefrom.

It is upon this ground that we are all of opinion that the plaintiff should become nonsuit.